...

1  DOUGLAS H. HENDRICKS (CA SBN 83611)
   DHendricks@mofo.com
2  ROSEMARY S. TARLTON (CA SBN 154675)
3  BRIAN L. LEVINE (CA SBN 246726)
   MORRISON & FOERSTER LLP
4  425 Market Street
   San Francisco, California  94105-2482
5  Telephone:  (415) 268-7000
   Facsimile:   (415) 268-7522

6
   Attorneys for Plaintiff and Counter-Defendant
7  VERIFIED IDENTITY PASS, INC.,
   D/B/A CLEAR REGISTERED TRAVELER
8
   ANDREW P. BRIDGES (SBN: 122761)
9  abridges@winston.com
   JENNIFER A. GOLINVEAUX (SBN: 203056)
10 jgolinveaux@winston.com
   K. JOON OH (SBN: 246142)
11 koh@winston.com
   WINSTON & STRAWN LLP
12 101 California Street
   San Francisco, CA  94111-5894
13 Telephone:   415-591-1000
   Facsimile:   415-591-1400
14
   Attorneys for Defendant and Counterclaimant
15 PRIVA TECHNOLOGIES, INC.

16
                    UNITED STATES DISTRICT COURT
17                 NORTHERN DISTRICT OF CALIFORNIA
                         SAN JOSE DIVISION
18

19 VERIFIED IDENTITY PASS, INC., d/b/a
   CLEAR REGISTERED TRAVELER,
20                                              Case No. CV-08-1123 JW
                Plaintiff and Counter-
21              Defendant,                      **JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**
22
           v.                                   Date:      September 8, 2008
23                                              Time:      10:00 a.m.
   PRIVA TECHNOLOGIES, INC.,                    Location:  Courtroom 8, 4th Floor
24
                Defendant and
25              Counterclaimant
26                                              The Honorable James Ware

27

28

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER, Case No. CV-08-1123 JW

pa-1275110

On July 2, 2008, counsel for Plaintiff and Counter-Defendant, Verified Identity Pass Inc., and counsel for Defendant and Counterclaimant, Priva Technologies Inc. met and conferred pursuant to Federal Rule of Civil Procedure 26(f) and Civil Local Rule 16-3.  Pursuant to the Stipulation and Order Regarding Case Schedule, as modified by the Court on June 2, 2008, the parties jointly submit the following Case Management Conference Statement and [Proposed] Order pursuant to Local Rule 16-9 and respectfully request that the Court adopt it as its Case Management Order in this case.

1.      <u>Jurisdiction and Service</u>:  No dispute exists regarding subject matter jurisdiction, personal jurisdiction, or proper venue.  This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks); 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws); and 28 U.S.C. § 1367 (supplemental jurisdiction).  All parties have been served or have waived service in this action.

2.      <u>Facts</u>:

**VIP's Statement**

This case is about the obvious consumer confusion and unfair competition that will result if a latecomer to the emerging Registered Traveler business is allowed to use the trademark "CLEARED" in competition with the well-established industry leader who, since the industry's inception, has operated using the trademark "CLEAR."

Plaintiff Verified Identity Pass, Inc. d/b/a Clear Registered Traveler ("VIP") is the pioneer of the private sector Registered Traveler program and currently the leading provider of Registered Traveler cards and services for consumers of air travel.  Since the inception of the industry in 2005, VIP has competed for the right to provide expedited security lanes at airports nationwide, and to provide consumers with the associated Registered Traveler cards, all under its trademark "CLEAR."  After having sat on the sidelines while VIP made substantial investments not only to build its own brand, but also to build the infrastructure for the industry and eliminate the risks for newcomers, Priva Technologies, Inc. ("Priva") now seeks to wrongfully and

willfully infringe on VIP's "CLEAR" trademark by offering a competing Registered Traveler card and service under the virtually identical mark, "CLEARED." Priva's threatened actions will directly siphon off VIP's years of investment and will erode the good will and reputation VIP has earned. And most obviously, Priva's threatened actions will create hopeless confusion among consumers if its intentional conduct is not stopped.

VIP launched the first private sector Registered Traveler program in the United States in the summer of 2005, with the opening of a Registered Traveler lane at the Orlando airport available to subscribers using a CLEAR card. Since that launch, VIP has worked tirelessly to ensure the success of the Registered Traveler business and the prominence of its CLEAR card and services, receiving nationwide recognition in publications such as The Wall Street Journal, The New York Times, The Washington Post, The Boston Globe and USA Today. VIP has enrolled more than 200,000 subscribers in its CLEAR membership services, and is now operating CLEAR express lanes at over 30 terminals in eighteen airports nationwide, including San Francisco, San Jose, New York JFK, and La Guardia. In addition, millions of CLEAR advertisements have been sent directly to individual consumers through CLEAR marketing partners, including Visa, American Express, Hyatt Hotels, British Airways, AirTran Airways, Frontier Airlines, and Virgin Atlantic Airways, among others.

Despite the prominence of VIP's CLEAR cards and services, Priva made a brazen announcement on February 18, 2008 of its intention to launch a Registered Traveler card and service under the CLEARED mark, a mark never before used for consumer services in the Registered Traveler program, by a company which has never operated in the Registered Traveler industry and which has never enrolled any consumers in any Registered Traveler program. Instead, we are informed that Priva has used its CLEARED mark solely in connection with software and hardware marketed to businesses, financial institutions, and government agencies seeking to ensure the safety of their sensitive data. In making the February 18 announcement, Priva asserted its right to use its enterprise technology mark to reach consumers of the Registered Traveler program, despite the harmful consumer confusion it would surely engender.

1   Indeed, this could not have been an innocent mistake resulting from a lack of familiarity
2   with the prominent and well-respected CLEAR brand.  Any business seeking to enter the
3   Registered Traveler sector, or in fact any corporate traveler, would have been amply aware of
4   VIP and its prominent CLEAR mark.  For example, since its launch, CLEAR has been reported
5   on in the media on more than 2,000 occasions. In addition, CLEAR's name and website
6   (www.flyclear.com) has consistently been the first listing that appears in a Google search for
7   "Registered Traveler," which is not surprising because CLEAR pioneered the program and has
8   since been chosen by every airport that has engaged in a competitive selection process for a
9   Registered Traveler service provider.  Thus, Priva must have been aware of the CLEAR card and
10  program for at least as long as it has had any serious interest in entering the Registered Traveler
11  space.  Yet it chose to sit on the side lines in silence and allow VIP to continue to develop,
12  market and advertise the CLEAR brand for years as the well-known and established leader
13  among Registered Traveler consumers.  While Priva may hope to ride the coat tails of VIP's hard
14  work and success and siphon off the goodwill of the valuable CLEAR Registered Traveler cards
15  and services, the trademark laws require otherwise.  Such conduct must not be sanctioned; it
16  must be enjoined.

17  **Priva's Statement**

18  Founded in 1999, Priva Technologies, Inc. ("Priva") develops and markets advanced
19  identity authentication technologies and transaction processing solutions for a variety of
20  government, enterprise, and consumer markets under its mark CLEARED.  Identity
21  authentication service providers commonly use security cards and tokens to authenticate identity
22  for a variety of purposes, such as retail purchases, logging on to computers and computer
23  networks, viewing physical and electronic documents, and safeguarding entry to physical areas
24  — including secured areas in buildings — in a variety of settings — including office buildings,
25  government and military facilities, and airports.
26  Priva has used its CLEARED mark in commerce, including its use in connection with its
27  identity authentication services and related products, as early as 2002.  Priva's flagship product,
28  its Cleared Security Platform, is a leading identity authentication and audit system.  The Cleared

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER, Case No. CV-08-1123 JW                3

Security Platform features the ClearedKey (a USB-based security token the size of a keychain fob with an integrated fingerprint reader) and the ClearedChip (an advanced security-certified microchip). Once an individual touches the ClearedKey token, the Cleared Security Platform authenticates that person's identity so the individual can access a secured environment.

Priva owns three federal registrations for its CLEARED mark that issued in 2004. Priva has prominently used its CLEARED house brand and mark in connection with a host of identity authentication products and services including the CLEARED SECURITY PLATFORM, CLEAREDCHIP, CLEAREDHOST, CLEAREDKEY, CLEAREDPIC, CLEAREDPAY, CLEAREDBADGE, and CLEARED OMNIPASS ENTERPRISE.

Priva has marketed its CLEARED branded identity authentication goods and services for use in connection with providing authorized individuals access to secure physical sites since at least as early as 2002. The press has reported on the applicability of Priva's CLEARED goods and services to allow travelers to clear security lines expeditiously for years. For example, in the summer of 2003, an NBC4 news report detailed Priva's CLEARED identity authentication goods and services, such as the ClearedKey and ClearedChip, and different uses for the Cleared system, including as "part of a national transportation card. ClearedTravelers could move through shorter lines"; to gain "access to secure areas"; with "e-commerce, including online banking to reduce identity theft"; and inside cell phones, PDAs, and anything else that connects to the Internet. Priva has also presented Priva's CLEARED branded services and goods to the federal government for use at physical access control points, including to accelerate security screening for travelers.

In 2005, Priva formed the Cleared Travel Corporation to provide travel-related goods and services, including as part of the Transportation Security Administration's ("TSA") registered traveler program, utilizing Priva's Cleared Security Platform. The Cleared Security Platform and the ClearedKey products are ideally suited for the registered traveler program, providing an elegant, one-touch solution to verify registered travelers.

In January 2008, the TSA approved Priva as an authorized Service Provider for the TSA's registered-traveler program. Priva's participation in the registered-traveler program is a

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER, Case No. CV-08-1123 JW    4

natural application of the identity authentication services goods and services it has long provided. Priva has been developing and marketing identity authentication security solutions for government agencies, financial institutions, and transportation providers for years.

In addition, VIP has received negative press from national and local news sources and trade publications criticizing its implementation, execution, and operation of its registered traveler service, most recently regarding a security breach that forced VIP to suspend new enrollments for a time. VIP's infringing use of the CLEAR mark is likely to harm Priva's stellar reputation.

On April 24, 2008, Priva answered VIP's complaint and filed counterclaims for trademark infringement, unfair competition, and trademark dilution based upon VIP's junior use of a mark, CLEAR, which is nearly identical to Priva's CLEARED mark and likely to cause confusion as to source, sponsorship, and affiliation of the parties' goods and services.

3.  <u>Legal Issues</u>:

**VIP's Statement**

At this time, the principal legal issues appear to be:

a. Whether there was a likelihood of confusion in 2005 between the CLEARED authentication and transaction processing solutions offered by Priva and the CLEAR Registered Traveler Services offered by VIP at the time VIP developed the Registered Traveler industry and launched the first Registered Traveler program;

b. Whether Priva is barred by laches or other equitable defenses for its failure to take any action regarding the CLEAR Registered Traveler services despite the prominent advertisement and promotion of such services since 2005;

c. Whether Priva's recent move into Registered Traveler under the name "CLEARED" is likely to cause confusion and to dilute and tarnish VIP's nearly identical mark "CLEAR";

d. Whether VIP is entitled to damages for Priva's alleged infringement, unfair competition and/or dilution;

      e.      Whether Priva engaged, engages, or will engage in unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code § 17200; and

      f.      Whether VIP is entitled to an injunction, declaratory relief, and rectification of the federal trademark register.

**Priva's Statement**

The principal legal issues are

      a.      which company has senior rights in its respective trademarks;

      b.      whether Priva's use of its CLEARED mark for registered-traveler services and goods is a natural expansion of Priva's identity authentication services;

      c.      whether VIP's knowledge and conduct precludes it from relief;

      d.      whether VIP's junior use of a nearly identical mark is likely to dilute and tarnish Priva's mark;

      e.      whether coexistence of the brands is legally possible in a context of inevitable confusion;

      f.      whether Priva is entitled to damages for VIP's alleged infringement, unfair competition and/or dilution;

      g.      whether VIP engaged, engages, or will engage in unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code § 17200; and

      h.      whether Priva is entitled to an injunction, declaratory relief, and rectification of the federal trademark register.

4.    <u>Motions</u>:

<u>Pending Motions</u>:  There are no previous or pending motions.  The parties anticipate that motions for judgment on the pleadings and/or motions for summary judgment may be filed at some point in the future.

<u>Pre-Trial Motions</u>:  The parties do not currently anticipate pre-trial motions, though that may change as discovery progresses.

1      5.    <u>Amendment of Pleadings</u>:  At this time the parties do not anticipate amending
2  their pleadings.  The parties agree that the deadlines and standards for amending the pleadings
3  should be consistent with the Federal Rules of Civil Procedure.
4      6.    <u>Evidence Preservation</u>:  The parties have taken appropriate steps to preserve evidence
5  relevant to the issues.
6      7.    <u>Disclosures</u>:  On July 25, 2008, VIP produced non-confidential initial disclosure
7  documents, including copies of the trademark files in questions, documents regarding the
8  Registered Traveler industry and VIP's presence therein, and documents related to the notoriety
9  of VIP's CLEAR mark.  Now that the Court has entered the parties' stipulated protective order,
10 VIP will produce additional confidential documents.
11 On July 24, 2008, Priva served its initial disclosure report pursuant to Federal Rule of
12 Civil Procedure 26(a)(1) and the Stipulation and Order Regarding Case Schedule, as modified by
13 the Court on June 2, 2008, but has yet to produce any documents.
14     8.    <u>Discovery</u>:
15 <u>Status of Discovery</u>:  On July 8, 2008, VIP served Priva with VIP's First Request for
16 Production of Documents and Things.  Priva provided its objections and responses to VIP's
17 Requests on August 13, 2008, and is in the process of preparing the requested documents or
18 things for production.  On August 13, 2008, Priva also served VIP with Priva's First Set of
19 Requests for Production of Documents, First Requests for Admissions, and First Set of
20 Interrogatories.  VIP's response to Priva's discovery is due September 15, 2008.
21 Unless otherwise stated herein, the parties will follow the general rules and limitations on
22 discovery as set forth in the Federal Rules of Civil Procedure, Civil Local Rules, Standing
23 Orders and other orders issued by the Court in this matter.
24 Depositions:  No depositions have been taken in this case to date.  The parties propose
25 following the default rules and limitations on depositions as set forth in the Federal Rules of
26 Civil Procedure, including Federal Rule of Civil Procedure 30(a)(2)(A)(i) and its default number
27 of ten (10) depositions per side.
28

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER, Case No. CV-08-1123 JW    7

Interrogatories:  The parties propose following the default rules and limitations on interrogatories as set forth in the Federal Rules of Civil Procedure, including the default number of 25 interrogatories per side.

Expert Discovery:  The parties propose that expert disclosure and expert discovery take place after the close of fact discovery.

Scope of Anticipated Discovery:

**VIP's Statement**

VIP will need discovery related to the factual and legal issues discussed above, and the areas set forth in its July 8, 2008, First Request for Production of Documents and Things, including, but limited to the following topics:

- Priva's knowledge of VIP and its CLEAR mark;
- The creation, design, selection, adoption, and use of the CLEARED mark by Priva;
- The products and services offered by Priva using the CLEARED mark or any other mark;
- The amount, volume, and geographic extent of sales of goods and/or services offered under the CLEARED mark;
- Priva's customers and others to whom it targets or markets its goods or services;
- Priva's sales, profits, and expenditures in promotion of the CLEARED mark;
- Priva's advertising, marketing, or promotional materials for products and/or services offered in connection with CLEARED Mark;
- Priva's knowledge of and involvement in the Registred Traveler industry;
- Consumer recognition of the CLEARED mark;
- Priva's efforts to enforce or defend its rights in any CLEARED mark;
- Priva's planned, intended, or actual use of the CLEARED mark, or any other mark, in connection with Registered Traveler goods or services;
- Priva's relationship, if any, with the TechTravelers, the Department of Transportation, Federal Aviation Administration, Cleared Travel Corporation, the Transportation Services Administration, providers of Registered Traveler Services, and airports;

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER, Case No. CV-08-1123 JW          8

- The likelihood of confusion among customers and potential customers;
- Priva's claims;
- Priva's claimed defenses;
- Priva's claimed damages; and
- VIP's damages.

**Priva's Statement**

Priva will need discovery on the factual and legal discussed above, including

- likelihood of confusion among customers and potential customers;
- information regarding VIP's use of the CLEAR mark;
- information regarding VIP's advertisements;
- information regarding VIP's selection, adoption, and use of the CLEAR mark;
- VIP claims;
- VIP claimed defenses;
- VIP's claimed damages;
- Priva's damages;
- VIP's knowledge regarding Priva, its business, and its CLEARED mark;
- VIP's trademark selection and adoption process.

Electronically Stored Information: The parties agree to produce electronically stored information in .tiff format with load files. The parties reserve the right to seek native files from the producing party when necessary.

Protective Order: The parties filed a stipulated protective order with the Court on August 18, 2008, which the Court entered on August 27, 2008.

Schedule:

Proposed discovery and disclosure deadlines are set forth below in Section 17.

9. <u>Class Actions</u>: This is not a class action.

10. <u>Related Cases</u>: To the parties' knowledge, there is no related case or proceeding pending before another judge of this court, or before another court or administrative body.

11. <u>Relief</u>:

**VIP's Statement**

VIP has requested entry of judgment in its favor and against Priva as follows:

(1) That the Court preliminarily enjoin Priva, its officers, agents, servants, employees, attorneys, and all others in active concert or participation with them from using the term or designation CLEARED, or any other designation similar to or likely to cause confusion with VIP's CLEAR trademarks (including any designation including the phrase CLEAR), in conjunction with registered traveler airport services or associated cards, and from committing any other unfair business practices directed toward obtaining for itself the business and customers of VIP;

(2) That following trial of this action, the Court enter final judgment as follows:

(a) That the Court issue a permanent injunction pursuant to 15 U.S.C. § 1116 enjoining Priva, its officers, agents, servants, employees, attorneys, and all others in active concert or participation with them from:

(i) directly or indirectly using the mark CLEARED, or any other designation similar to or likely to cause confusion with VIP's CLEAR trademarks (including any designation including the phrase CLEAR), that is likely to cause confusion or mistake or to deceive;

(ii) directly or indirectly using for any commercial purpose any logo, trade name, or trademark which may be calculated to represent, or which has the effect of falsely representing, that the services of Priva are VIP's services or are authorized, sponsored, or in any way associated with VIP; and

(iii) otherwise infringing the CLEAR trademarks or unfairly competing with VIP;

(c) That the Court award VIP reasonable funds for future corrective advertising;

(d) That the Court grant VIP any other remedy to which it may be entitled, including all remedies provided for in 15 U.S.C. § 1117 and under California law;

(e) In addition, because Priva's actions had to have been willful and deliberate, VIP requests that the Court award treble damages, costs and attorneys' fees and such other relief as it deems just and proper.

**Priva's Statement**

Priva has requested entry of judgment in its favor and against VIP as follows:

A. Preliminarily and permanently enjoining VIP, and all persons in active concert or participation with it,

- from use of names or marks confusingly similar to Priva's CLEARED mark, including the mark CLEAR;
- from acts that dilute Priva's CLEARED mark, including use of the mark CLEAR;
- from representing by any means whatsoever, directly or indirectly, that VIP and its products, services, and commercial activities are associated in any way with Priva or its products or services, and from otherwise taking any other action likely to cause confusion, mistake, or deception;
- from doing any other acts calculated or likely to cause confusion or mistake in the mind of the public or to lead others to believe that VIP's services or products come from or are the services or products of Priva, or are somehow sponsored by or associated with Priva; and
- from otherwise unfairly competing with Priva or misappropriating Priva's reputation and goodwill;

B. Ordering VIP to deliver up for destruction all products, labels, signs, prints, packages, wrappers, receptacles, advertisements, web pages, and other articles bearing the infringing mark CLEAR in its possession or under its control;

C. Awarding Priva its actual damages and VIP's unjust and unlawful profits arising from VIP's misconduct;

D. Ordering restitution to Priva of VIP's unjust enrichment and unlawful gains to the detriment of Priva;

E. Awarding Priva additional damages and profits of three times the actual damages and profits, together with attorneys' fees;

F. Declaring that VIP is not entitled to continued federal registration of the CLEAR marks and ordering the Director of the United States Patent and Trademark Office to cancel registration or otherwise to rectify the register with respect to the registrations;

      G.     Awarding Priva costs of suit; and

      H.     Granting such other relief as the Court may determine just and equitable.

12.    <u>Settlement and ADR</u>:  The parties agreed to participate in ENE and on July 10, 2008, the Court ordered that the "presumptive deadline" for ENE to take place would be October 8, 2008.

13.    <u>Magistrate Judge</u>:  The parties do not consent, at this time, to assignment of this case to a United States Magistrate Judge to conduct further proceedings including trial and entry of judgment.

14.    <u>Other References</u>:  The parties do not believe, at this time, that this action is suitable for binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.    <u>Narrowing of Issues</u>:  The parties do not believe, at this time, that there are any additional issues which can be narrowed by agreement, motion, or suggestions from the Court or Stipulation at this time.

16.    <u>Expedited Schedule</u>:  At this time, the parties do not believe that this case can be handled on an expedited basis.

17.    <u>Scheduling</u>:

| **Event** | **Proposed Date** |
| --- | --- |
| Last Day To Amend Pleadings | See Section 5 |
| Fact Discovery Closes | March 2, 2009 |
| Simultaneous Disclosure Of Experts; Expert Discovery Opens | April 6, 2009 |
| Expert Discovery Closes, including depositions of experts | June 8, 2009 |
| Last Day for Hearing Dispositive Motions | July 13, 2009 |
| Final Pretrial Conference | August 28, 2009 |
| Trial | September 14, 2009 |

18. <u>Trial</u>: The parties request that this case be tried in front of a jury.  The parties expect trial to last approximately five court days.

19. <u>Disclosure of non-party interested entities</u>:

VIP had no interested entities or non-parties to report, and filed its disclosures as required by Civil Local Rule 3-16.

See Priva's Certificate of Interested Entities filed April 28, 2008.  Priva has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3.16.  As set forth in those Certifications, the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (1) have a financial interest in the subject matter in controversy or in part of the proceeding, or (ii) have a non-financial interest in the subject matter or in a party that could be substantially affected by the outcome of this proceeding:  Jeffrey Minushkin, Maverick Fund USA, Ltd., Maverick Fund, L.D.C., and Maverick Fund II, Ltd.

20. <u>Additional Matter</u>

The parties do not have any additional matters to raise at this time.

Dated: September 3, 2008

DOUGLAS L. HENDRICKS
ROSEMARY S. TARLTON
BRIAN L. LEVINE
MORRISON & FOERSTER LLP


By:      /s/ Brian L. Levine
             Brian L. Levine
Attorneys for Plaintiff and Counter-Defendant,
VERIFIED IDENTITY PASS, INC., d/b/a
CLEAR REGISTERED TRAVELER

| | | |
|---|---|---|
| 1 | DATED: September 3, 2008 | ANDREW P. BRIDGES |
| 2 | | K. JOON OH |
| | | JENNIFER A. GOLINVEAUX |
| 3 | | WINSTON & STRAWN LLP |

By      /s/ K. Joon Oh
K. Joon Oh
Attorneys for Defendant
PRIVA TECHNOLOGIES, INC.

**In compliance with General Order 45, X.B., I hereby attest that K. Joon Oh has concurred in this filing.**

### CASE MANAGEMENT ORDER

The parties having submitted this Joint Case Management Statement and good cause appearing, IT IS HEREBY ORDERED that the parties' Joint Case Management Statement, subject to any revisions set forth above, is hereby adopted by the Court as the Case Management Order for the case and the parties are ordered to comply with this Order. Trial in this matter shall be scheduled for _____.

Dated: _____

The Honorable James Ware
United States District Judge
Northern District of California